EDOK - Application for Search Warrant (Revised 5/13)

# United States District Court
### EASTERN DISTRICT OF OKLAHOMA

In the Matter of the Search of the Premises known as 100049 South 4784 Road Muldrow, Sequoyah County, Oklahoma

Case No. 17-MJ-002-SPS

FILED

JAN 23 2017

PATRICK KEANEY
Clerk, U.S. District Court
By _____ Deputy Clerk

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the Eastern District of Oklahoma (*identify the person or describe property to be searched and give its location*):

SEE ATTACHMENT "A"

The person or property to be searched, described above, is believed to conceal (*identify the person or describe the property to be seized*):

SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is (*check one or more*):

- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violations of Title 42. United States Code, Section 408(a)(4) and 407(a)(7)(B) and Title 18, United States Code, Sections 641 and 1028A, and the application is based on these facts:

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Charles M. Briscoe, Special Agent SSA OIG

Sworn to before me and signed in my presence.

Date: 1/23/2017    Time: 1355

_____
Judge's signature

City and state:   Muskogee, Oklahoma

STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Charles Briscoe, a special agent with the Office of the Inspector General – Social Security Administration, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant has been employed as a Special Agent with the Office of the Inspector General – Social Security Administration since November of 2009. Prior to your Affiant's employment with the Office of the Inspector General, he was employed as a Special Agent with the United States Secret Service for 8 years.

2. While being employed with the United States Secret Service and the Office of the Inspector General, your Affiant has attended extensive training pertaining to crimes involving financial fraud associated with money laundering, bank fraud, embezzlement, concealment of material facts, false statements, identity theft, fraud associated with identification documents, access device fraud, mail fraud, forgery, and Social Security fraud at the Federal Law Enforcement Training Center, the United States Secret Service JJRTC facility, as well as the Inspector General Criminal Investigators Academy. Since his employment, your Affiant has also received additional training pertaining to the aforementioned criminal activities from various law enforcement training sessions. During his employment, your Affiant has further gained experience in working multiple complex criminal cases involving these matters, both pertaining to state and federal violations.

## IDENTIFICATION OF PREMISES TO BE SEARCHED

3. This affidavit is being submitted in support of an application for a search warrant for the residence located at 100049 South 4784 Road, Muldrow, Oklahoma (known herein after as "**SUBJECT PREMISES**"). Your Affiant believes that evidence pertaining to the below listed violations is currently located at the **SUBJECT PREMISES**, including computers and media, storage facilities, and vehicles located on the curtilage. The **SUBJECT PREMISES** is further described in Attachment A.

4. The facts of this investigation dictate that the suspect has assumed a false identity for over two decades. Your Affiant knows, from extensive training and from working multiple complex financial crimes investigations, that when a suspect creates a false lifestyle under a fraudulent identity, evidence of the criminal activities accumulate in mass quantities over periods of years. Therefore, your Affiant reasonably believes that such evidence may be located in computers, vehicles, storage units, or facilities located on the property of the **SUBJECT PREMISES**, in addition to the **SUBJECT PREMISES**, itself. Additionally, your Affiant submits that the suspect utilizes a specific vehicle that has been consistently located at **SUBJECT PREMISES** for daily activities which are directly associated with his criminal schemes. Furthermore, your Affiant believes the trade of the suspect includes employment associated with construction jobs and that he uses his vehicle to travel to and from work sights. Additionally, the

1

investigation reveals that the vehicle in which he commonly operates has been used to transport work-related items.

## IDENTIFICATION OF THE ITEMS TO BE SEIZED AND EXAMINED

5. The items to be searched for include evidence of Social Security Fraud, specifically, Title 42, U.S.C. § 408(a)(4) (Concealment of Material Facts), Title 18, U.S.C. § 641 (Theft of Government Funds), and Title 18 U.S.C. § 1344 (Bank Fraud). Additionally, items to be searched for include evidence of Title 18, U.S.C. § 1028A (Aggravated Identity Theft) and Title 42, U.S.C. § 407(a)(7)(B) (Misrepresentation of a Social Security Number). Specific items to be seized are further described in Attachment B.

## TITLE II: SSA DISABILITY INSURANCE BENEFITS

6. Title II Disability Insurance benefits are paid under a social insurance program administered by the Social Security Administration. The payments under this program are commonly known as "Social Security benefits." The eligibility of these benefits can be affected based on several factors that constitute substantial gainful activity, also known as SGA. One such factor includes amounts of income received monthly from employment. These amounts can change from year to year. Currently, the SGA amount for 2016 is $1,130 or more per month for non-blind disabilities. Another such factor that constitutes SGA is the amount of work hours performed per month. Furthermore, if an applicant provides false statements on his or her initial application, such as their true identity, all payments disbursed thereafter are deemed fraudulent.

## PROBABLE CAUSE

7. This investigation involves Allen Frank MARTIN (known herein as MARTIN), a Title II beneficiary, and his scheme to defraud the Social Security Administration, as well as his executed schemes of aggravated identity theft.

8. On September 07, 2016, your Affiant received information from a source (known hereinafter as "SOURCE 1") that Allen Frank MARTIN has assumed the false, stolen identity of John David Bailey, a true victim, to include Bailey's date of birth and Social Security number. Throughout the course of the investigation, SOURCE 1 has provided information that is believed to be truthful. His or her information has been found to be reliable and has been corroborated through database checks, social security records, bank records, surveillance, and through interviews with other sources of information. SOURCE 1 has one felony conviction for possession of a controlled substance in 2016. SOURCE 1 did not seek any compensation for cooperation.

9. Facts obtained from the investigation revealed that MARTIN has utilized the Bailey identity since 1990 with various government agencies, businesses, and companies, assuming a separate life as Bailey. Such uses include employment, obtaining driver's licenses from different states, bank fraud, and Social Security fraud. The following is an outline of particulars associated with the fraudulent use of the identity.

2

10. According to SOURCE 1, MARTIN absconded from the State of Arkansas in 1990 while he was on parole and moved to Reno, Nevada. While at a casino, MARTIN obtained a lost wallet belonging to John David Bailey, and thereafter, was able to obtain various state identification documents under Bailey's identity. Confirmation was made with the Arkansas Department of Community Correction that MARTIN was paroled in 1988 from a prison sentence stemming from an aggravated robbery conviction. MARTIN was listed as an absconder by the State of Arkansas in 1991.

11. According to SOURCE 1, MARTIN moved to Bakersfield, California, after stealing the identity of Bailey. MARTIN continued to live in Bakersfield under the stolen identity. Confirmation was made with the State of California that MARTIN obtained a California driver's license under the Bailey identity in 1994. Through the course of investigation, your Affiant has obtained an Oklahoma driver's license issued to MARTIN in 1988 under his given name. The photograph of MARTIN'S Oklahoma license bears the likeliness of the same individual as the California license under the Bailey identity.

12. According to SOURCE 1, MARTIN moved back to Arkansas after living in California and took up residence in the central Arkansas area under the stolen identity of Bailey. Confirmation was made with the State of Arkansas that MARTIN obtained an Arkansas driver's license under the Bailey identity in 1996. The address is listed as 7913 Autry Road, Maumelle, Arkansas, which is a suburb of Little Rock.

13. According to SOURCE 1, MARTIN moved to Billings, Montana, and continued living under the stolen identity of Bailey. The source reported that, while in Billings, MARTIN developed cancer and applied for SSA disability benefits under the Bailey identity. Confirmation was made with the Social Security Administration that MARTIN applied for said disability benefits under the Bailey identity and was subsequently approved.

14. According to SOURCE 1, MARTIN moved back to Arkansas to begin receiving cancer treatments under the stolen identity of Bailey. This investigation revealed that MARTIN opened a Superior Bank account under the stolen identity of Bailey in September of 2003 while living in North Little Rock, Arkansas. In doing so, the account was opened with the name, date of birth, and Social Security number of Bailey. Additionally, confirmation was made with the State of Arkansas that an Arkansas driver's license was issued to MARTIN under the Bailey identity in October of 2003. The address listed on the license was a North Little Rock, Arkansas address.

15. This investigation revealed that MARTIN obtained another Arkansas driver's license under the Bailey identity in December of 2007.

16. This investigation revealed that MARTIN opened an Arvest Bank account under the stolen identity of Bailey in 2007. This account remains active to this date and is being used for the deposit of the fraudulently obtained SSA benefits.

17. According to SOURCE 1, MARTIN moved to the Van Buren, Arkansas, area around 2009 and continued living under the stolen identity of Bailey. Investigation revealed that MARTIN executed a P.O. Box application with the U.S. Postal Service for P.O. Box 21, Van Buren, Arkansas, on March 18, 2009, under the stolen identity of Bailey. Investigation has determined that MARTIN has continued receiving mail at this address up through recent months.

18. On July 01, 2009, MARTIN obtained another Arkansas driver's license under the stolen Bailey identity. Bailey listed his residence as 605 North 19th Street, Van Buren, Arkansas.

19. In or around November of 2009, MARTIN completed Form SSA 454-BK (Continuing Disability Review Report) under the Bailey identity in order to continue his Social Security disability funds. This form is not dated, however, it was uploaded in the SSA database on November 16, 2009.

20. On July 22, 2011, MARTIN obtained another Arkansas driver's license under the stolen Bailey identity. Bailey listed his residence as 605 North 19th Street, Van Buren, Arkansas.

21. On September 17, 2012, MARTIN opened a checking account with Arvest Bank under the Bailey identity at a branch located in Fort Smith, Arkansas. The residential address listed is 605 North 19th Street, Van Buren, Arkansas, and PO Box 21, Van Buren, Arkansas. The account is still active to this date and has been used for various deposits, including payments for work activity.

22. On October 03, 2012, MARTIN appeared at the SSA Fort Smith, Arkansas, Office using the Bailey identity in order to change his address to reflect P.O. Box 21, Van Buren, Arkansas. In doing so, MARTIN purported Bailey's identity as his own, to include Bailey's SSN.

23. On December 28, 2015, MARTIN obtained another Arkansas driver's license under the stolen Bailey identity. Bailey listed his residence as 605 North 19th Street, Van Buren, Arkansas.

24. On or around June 23, 2016, MARTIN entered the Ennen Eye Center located at 3312 South 70th Street, Fort Smith, Arkansas, and executed a document in order to be received as a patient. On the document, titled "Form 1035", MARTIN listed his name as "John D. Bailey", along with Bailey's date of birth and Social Security number. On this application, MARTIN reveals his email address to be "baileyjohn250@gmail.com" and a cell phone number of 479-806-5088. Additionally, MARTIN provided the clinic with his fraudulently obtained Arkansas driver's license he obtained in December of 2015. MARTIN was subsequently examined by the eye clinic and various medical procedures took place thereafter.

25. A recent interview was conducted of the true victim, John David Bailey, who resides in another state. Bailey advised investigators that he believes his identity was compromised when his wallet was stolen in Reno, Nevada, in 1990 or 1991. At the time, Bailey was serving in

the United States Marine Corp and resided in Sparks, Nevada. Bailey reported that in 1993 he was stationed at Fort Campbell, Kentucky, when he attempted to purchase a vehicle. Bailey stated that due to his identity being stolen, his credit had been ruined. Bailey stated to the agents that he never gave anyone permission to use his identity or Social Security number.

26. Your Affiant received information from SOURCE 1 regarding the potential residence location of MARTIN. SOURCE 1 reported that MARTIN has taken steps to conceal his residence from law enforcement by living in a trailer-style home located on land belonging to an owner of a tire shop. SOURCE 1 stated that the tire shop is possibly on "Midland Blvd" or "Wheeler Avenue" in Fort Smith, Arkansas. SOURCE 1 advised that MARTIN is making monthly payments to the tire shop owner for rent. SOURCE 1 reported that, although he/she does not know the exact location of the residence, the residence is supposedly located in Oklahoma very close to the Arkansas border and believed to be near Cedarville, Arkansas. SOURCE 1 also reported that the utilities to the residence are set up in somebody else's name, other than MARTIN or "Bailey". SOURCE 1 advised MARTIN has lived at this residence for a couple of years and stated he has not lived at the 605 North 19th Street residence for a significant amount of time. SOURCE 1 advised MARTIN continues to use the 605 North 19th Street address to elude law enforcement. SOURCE 1 further advised that the residence and utilities are set up in another name to further his attempts to conceal his location.

27. Your Affiant has obtained MARTIN'S bank records and discovered that monthly payments have been routinely made, generally between $300 and $500, to Darrell's Tire Shop and Flash Enterprises. These payments have been made consistently for several years. Both businesses are located in Fort Smith and are owned by Darrell Elliott. Darrell's Tire Shop is located on Midland Blvd.

28. The bank records also revealed payments made to Cookson Hills Electric Cooperative for utility services for the last several months from MARTIN'S account. Records from Cookson Hills Electric Cooperative revealed that the payments were being made on a utility account in the name of David Villarreal for the **SUBJECT PREMISES**. Your Affiant obtained the application associated with the account. The application was executed on June 03, 2014, and lists the property owner of the **SUBJECT PREMISES** as "John D. Bailey". The **SUBJECT PREMISES** is located in Sequoyah County, Oklahoma, and is less than five (5) miles from the Arkansas border, near Cedarville, Arkansas.

29. SSA database record checks on David Villarreal revealed he is a current recipient of disability benefits. The SSA records show Villarreal's residential address to be 1612 Jackson Street, Fort Smith, Arkansas, which is reflected on a notice dated February 17, 2014. Records also reflect an "address update" on January 27, 2015, where his address of record was changed to 204 Prospect Avenue, Van Buren, Arkansas. No SSA records were discovered that show Villarreal's address to be the **SUBJECT PREMISES** with the SSA. Furthermore, your Affiant discovered that an Arkansas driver's license was issued to Villarreal on November 03, 2016. His address reflected on the license is 46 Alpine Road, Van Buren, Arkansas.

30.     Your Affiant received records from the Sequoyah County Assessor's Office pertaining to the **SUBJECT PREMISES**. The records show that the property is in the name of "Syrock, Edward c/o Darrell Elliott". Accurint database checks, a law enforcement database, shows the person associated with the address is Edward Syrock. The database also indicates that Syrock died in 2007. The Social Security Administration database lists the date of death of Edward Syrock as October of 2007.

31.     On November 07, 2016, your Affiant conducted a drive-by surveillance of the **SUBJECT PREMISES** and observed a dark colored pick-up truck matching the description of the truck MARTIN has been seen operating. The vehicle was parked in front of the residence. The surveillance took place at approximately 9:40 PM. Your Affiant has obtained numerous Arvest Bank ATM videos of MARTIN making withdrawals from his fraudulent account. The videos clearly show him operating a dark colored Dodge 1500, single cab, pick-up truck on numerous occasions.

32.     On November 16, 2016, your Affiant conducted drive-by surveillance of the **SUBJECT PREMISES** and observed the same truck parked at the residence. The surveillance took place at approximately 5:45 PM.

33.     On November 17, 2016, your Affiant conducted a drive-by surveillance of the **SUBJECT PREMISES** at approximately 8:30 AM and observed the same truck parked in the same location it was in on November 16th. This observation was clearly made in daylight hours and your Affiant has confirmed that the truck is the same make, model, and color (Dodge Ram, 1500, single cab, dark green) as the truck MARTIN has operated in the bank footage.

34.     On December 1, 2016, your Affiant conducted a drive-by surveillance of the **SUBJECT PREMISES** at approximately 8:35 PM and observed MARTIN'S truck on the property.

35.     On December 20, 2016, your Affiant conducted aerial surveillance of the **SUBJECT PREMISES** at approximately 11:30 AM and observed MARTIN'S truck on the property.

36.     As mentioned in Paragraph 6 above, SSA allows disability beneficiaries to make a certain amount of money per month from employment. The cap is known as "Substantial Gainful Activity" or SGA. If a beneficiary goes over the SGA amount, they are not eligible to receive the SSA disability disbursement for that particular month. Even if the money earned from work activities does not go over the SGA amount, the beneficiary is required to report the work activity to the SSA. The SGA amount can change each year, generally increasing due to cost-of-living calculations.

37.     Aside from the identity theft violations associated with the SSA benefits, your Affiant has discovered upon reviewing bank records that MARTIN has been self-employed under the stolen Bailey identity and has concealed the employment activities from the SSA. The work

is construction-related employment activities as he has been paid by various hotels for "remodeling" jobs. The earliest paycheck discovered is dated September of 2009. Although he was not paid every month, and although some months were not over SGA, MARTIN was required to report the work activities. The checks were made payable to MARTIN under the John Bailey name and deposited in his Arvest account.

The following is summary of paychecks he received:

- September 2009: Super 8 Motel in Sallisaw, OK. Amount $315.00 (not SGA)

- November 2009: Gurukrupa Investment, LLC in Siloam Springs, AR. Amount $200 (not SGA)

- January 2010: Gurukrupa Investment, LLC in Siloam Springs, AR. Amount $300 (not SGA)

- September 2011: Motel 6 (unk. location). Amount $1,215 (over SGA)

- October 2011: Ganesh Realty LLC (Comfort Inn and Suites) in Broken Arrow, OK. Amount $600 (not SGA)

- December 2011: Ganesh Realty LLC (Comfort Inn and Suites) in Broken Arrow, OK. Amount $888.68 (not SGA)

- January 2012: Holiday Inn Express and Suites (Ok location). Amount $600
    Laquenta Inn and Suites) (OK location). Amount $340(not SGA)

- April 2012: Jaimataji Realty LLC (OK location). Amount $183.86 (not SGA)
- May 2012:   Knights Inn in Tulsa, OK. Amount $2,019.51 (over SGA)

- June 2012: Ganesh Hotel in Midwest City, OK. Amount $850
    Knights Inn in Tulsa, OK. Amount $514.49
        Ganesh Hotels in Midwest City, OK. Amount $365 (over SGA)

- July 2012: Ganesh Hotel LLC (Super 8 in Midwest City, OK) Amount $850
    Super 8 Motel in Sallisaw, OK. Amount $150.00 (over SGA)

- August 2012:  Knights Inn in Tulsa, OK. Amount $233.84
        Mitech Construction in Broken Arrow, OK. Amount $982.90
        Mitech Construction in Broken Arrow, OK. Amount $758.51
        (over SGA)

- September 2012: Ganesh Hotel (Super 8 in Midwest City, OK) Amount $850
        Knights Inn in Tulsa, OK. Amount $290 (not SGA)

7

- October 2012:  Ganesh Hotel (Super 8 in Midwest City, OK) Amount $108.69
   Ganesh Hotel (Super 8 in Midwest City, OK) Amount $882.23
   (not SGA)

- November 2012:  Radma Swavi Motels in Oklahoma City, OK. Amount $450
   Knights Inn in Tulsa, OK.  Amount $153.28
   Holiday Inn Express and Suites in OK.  Amount $105
   Laquenta Inn and Suites (OK location).  Amount $37.50
   (not SGA)

- December 2012:  Radma Swavi Motels in Oklahoma City, OK. Amount $325
   Gurukrupa Investment- Siloam Springs, AR.  Amount $325
   Radma Swavi Motels in Oklahoma City, OK. Amount $410
   Radma Swavi Motels in Oklahoma City, OK. Amount $530
   Radma Swavi Motels in Oklahoma City, OK. Amount $315
   Laquenta Inn and Suites (OK location).  Amount $75
   (over SGA)

- January 2013:  Laquenta Inn and Suites (OK location).  Amount $302.98
   Radma Swavi Motels -Oklahoma City, OK. Amount $1,163.22
   Radma Swavi Motels -Oklahoma City, OK. Amount $817
   Ganesh Hotel (Super 8 in Midwest City, OK) Amount $248.59
   Ganesh Hotel (Super 8 in Midwest City, OK) Amount $600
   (over SGA)

- February 2013: Radma Swavi Motels -Oklahoma City, OK. Amount $1,340
   Radma Swavi Motels -Oklahoma City, OK. Amount $678.39
   (Unk. Payee) Amount $1,108.27 for "Outside Electric Works"
   (over SGA)

- April 2013:  Super 8 Motel in Sallisaw, OK. Amount $537
   Super 8 Motel in Sallisaw, OK. Amount $125
   Radma Swavi Motels -Oklahoma City, OK. Amount $1,137.56
   (over SGA)

- May 2013: Radma Swavi Motels -Oklahoma City, OK. Amount $1,124.18
   Radma Swavi Motels -Oklahoma City, OK. Amount $1,120.95
   (over SGA)

- June 2013:  Radma Swavi Motels -Oklahoma City, OK. Amount $630
   Super 8 Motel in Sallisaw, OK. Amount $120 (not SGA)

8

- July 2013:  Radma Swavi Motels -Oklahoma City, OK. Amount $1,157.94
            Radma Swavi Motels -Oklahoma City, OK. Amount $407.83
            Radma Swavi Motels -Oklahoma City, OK. Amount $705
            (over SGA)

- August 2013:  Days Inn in Sallisaw, Ok. Amount $1,046.75
             Radma Swavi Motels -Oklahoma City, OK. Amount $862.11
             Knights Inn in Tulsa, OK. Amount $589
             Holiday Inn Express and Suites (OK location) Amount $130
             Laquenta Inn and Suites (OK location). Amount $280
             (over SGA)

- September 2013:  Knights Inn in Tulsa, OK. Amount $824.97
              Radma Swavi Motels-Oklahoma City, OK. Amount $366.22
              Super 8 Motel in Sallisaw, OK. Amount $546.53
              (over SGA)

- November 2013:  Super 8 Motel in Tulsa, OK. Amount $2,943.71 (over SGA)

- January 2014:  Days Inn in Sallisaw, OK. Amount $1,134.20
              Sallisaw Hotel in Sallisaw, OK. Amount $390
              Knights Inn in Tulsa, OK. Amount $192.14

- February 2014:  Super 8 Motel in Sallisaw, OK. Amount $444.51 (not SGA)

- April 2014: Radma Swavi Motels -Oklahoma City, OK. Amount $369.34
            Ganesh Hotel (Super 8 in Midwest City, OK) Amount $443.14
            (not SGA)

- December 2014:  Days Inn in Sallisaw, OK. Amount $326.43 (not SGA)

- January 2015: Radma Swavi Motels -Oklahoma City, OK. Amount $60
             (not SGA)

- February 2015:  Days Inn in Sallisaw, OK. Amount $1,182.16 (over SGA)

- March 2015:  Shreeji Hospitality (unk. location). Amount $224.19 (not SGA)

- April 2015:  Diamond Express in Sallisaw, OK. Amount $548.09
            Dada Hospitality in Arkansas. Amount $1,762.83 (over SGA)

- May 2015:  Super 8 Motel in Sallisaw, OK. Amount $1,030.34 (not SGA)

38.     Your Affiant has conducted numerous identity theft investigations since being hired as a Special Agent with the United States Secret Service in 2001 and under his current

9

employment. Many of the investigations have resulted in the execution of both state and federal search and seizure warrants. From experience and training, your Affiant knows that suspects involved with violations associated with identity theft and financial crimes possess voluminous paperwork, receipts, logs, financial records, identification documents, and other various types of evidence. Your Affiant knows that it is common and routine for the suspects to possess said articles at the suspects' residences, on computers, in vehicles, and in structures on their property. This is particularly common in instances when a suspect has not only utilized false identities but has assumed a life under a false identity over decades. Furthermore, your Affiant knows that suspects involved in this type of activity commonly utilize computers, electronic media, and cellular phones to communicate with others, maintain records, and to commit the fraud. As noted in Paragraph 24 above, MARTIN listed his email address on a medical document. The email address was created using the false, victim name of "John Bailey", tying his criminal use to electronic equipment. Furthermore, on the same application, he listed a cell phone number as his contact telephone number, which reveals he is utilizing a cell phone in connection with, and in furtherance of, his criminal activities.

### Basis for the Request for No-Knock Entry and Nighttime Warrant

39. During the course of his investigation, your Affiant has conducted routine criminal history checks on Allen MARTIN, which reveal him to have a violent history. The following felony arrests are associated with MARTIN'S record:

- Assault on Person (Misdemeanor) (Bakersfield, CA)
- Assault on Peace Officer (Felony) (Bakersfield, CA)
- Resists Public Officer (Misdemeanor) (Bakersfield, CA)
- Assault with Deadly Weapon (Felony) (San Bernardino, CA)
- Resist Executive Officer (Felony) (San Bernardino, CA)
- Assault with a Deadly Weapon (Felony) (Fresno, CA)
- Resist Executive Officer (Felony) (Fresno, CA)
- Assault with a Deadly Weapon on Peace Officer (Fresno, CA)
- Resist Executive Officer (Felony) (Fresno, CA)
- Possession of Firearm by Certain Persons (Felony) (Sebastian County, AR)
- Robbery (Felony) (LeFlore County, OK)
- Aggravated Assault (Felony) (Sebastian County, AR)
- Aggravated Robbery (Arkansas)

*Note: These offenses are not the only felony offenses associated with MARTIN. They are only charges associated with violence and/or a danger to the community. Not all charges resulted in convictions. Even so, your Affiant states that it is not prudent or safe to assume that because some of the charges did not result in convictions, MARTIN was not engaged in said activities as it is not uncommon to dismiss charges in order to execute plea agreements associated with other charges. The charges were brought forth prior to MARTIN absconding from his parole status in 1991.

10

40. Furthermore, your Affiant received records from the Arkansas Department of Community Correction that MARTIN was housed in either High Security or Maximum Security state prisons while in custody.

41. Records from the Arkansas Department of Community Correction reveal that MARTIN was paroled from state prison in 1988. On January 16, 1991, MARTIN was entered as being an absconder from his parole supervision. MARTIN has never been apprehended in connection to the abscond status. In September of 2004, the Arkansas Department of Community Correction discharged MARTIN from parole due to "administrative purging of records" even though he was listed in an abscond status and was never apprehended.

42. SOURCE 1 believes that MARTIN thinks he is wanted for absconding since he was never apprehended. SOURCE 1 reported that when MARTIN was living in the Houston, Arkansas area (from 2003 through 2008), MARTIN frequently carried an assault rifle and a handgun secured "on his hip" while on his property. SOURCE 1 stated that MARTIN was always prepared and armed on his property, waiting for law enforcement to try to apprehend him. SOURCE 1 advised that MARTIN made frequent statements he was never returning to prison and that he was going to "fight to the end" with law enforcement officials. SOURCE 1 further advised that, just prior to moving to the Van Buren area around 2009, MARTIN had burglarized a neighbor and stolen approximately seven (7) firearms. SOURCE 1 stated when MARTIN moved to the Van Buren area, he took the firearms with him.

43. In addition, your Affiant discovered through MARTIN'S bank records associated with his fraudulent account, a purchase was made in the amount of $126.34 at Iron Sights Guns, a gun store located in Sallisaw, Oklahoma, in 2013. It should be noted that there are no felony charges or domestic abuse related charges under the stolen Bailey identity, thus providing MARTIN the ability to possess and purchase firearms and ammunitions under the false pretense that he is not a convicted felon. It is unknown at this time what was purchased.

44. Surveillance and records indicate that MARTIN does not leave his residence with any regularity. MARTIN does not seem to have a scheduled, full-time employment job requiring him to leave and return at a regular time each day. Bank records do not reveal transactions at particular locations with any regularity. Therefore, your Affiant has not been able to establish a regular pattern of travel.

45. MARTIN'S residence is located in a rural area of Sequoyah County and sits on acreage containing numerous trees and other structures throughout the land. The house has a perimeter fence made of barbed wire and contains an electrical wire meant to bring an electric charge to the fence. Furthermore, the drive near the residence is blocked with a large cattle gate. Such factors will hinder law enforcement's approach to the residence, making them more vulnerable during the execution of the warrant.

46. Given the details above, your Affiant asserts that a nighttime, no knock search warrant is necessary to protect the safety of the officers during the execution the search warrant.

The execution of the search warrant will be conducted by the Oklahoma Highway Patrol Tactical Team that specializes in events to include high-risk search warrants, arrest operations, and hostage situations and is experienced in conducting such operations in the safest manner possible. Your Affiant has consulted with the supervisor of the Tactical Team and he has advised that a nighttime execution without the requirement of knocking on the door of the residence would be the team's preferred method.

47. Wherefore, your Affiant respectfully requests this Court to issue a warrant to search the location described in Attachment A, to seize the evidence, fruits, and instrumentalities described in Attachment B, which individually or collectively constitute evidence of Title 42, U.S.C. § 408(a)(4) (Concealment of Material Facts), Title 18, U.S.C. § 641 (Theft of Government Funds), Title 18, U.S.C. § 1028A (Aggravated Identity Theft), and Title 42, U.S.C. § 407(a)(7)(B) (Misrepresentation of a Social Security Number). Based on the above, your Affiant requests a no-knock warrant with a nighttime exception.

Further your Affiant sayeth not.

_____
Charles M. Briscoe, Special Agent
SSA OIG

Sworn and subscribed to me this 23rd day of January, 2017.

_____
STEVEN P. SHREDER
United States Magistrate Judge

# ATTACHMENT A

*DESCRIPTION OF PROPERTY TO BE SEARCHED*

**Premises to be searched is located at 100049 South 4784 Road, Muldrow, (Sequoyah County) Oklahoma and is further described as a tan or light brown, single-story mobile home style residence with a white front door that faces northwest. The front entrance has approximately three (3) steps with handrails leading to the door. The residence contains a barbed wire fence that is secured with a gate across the drive of the property. The residence is located at the intersection of East 1000 Road and South 4784 Road. Furthermore, a deputy sheriff with the Sequoyah County Sheriff's Office, who has vast knowledge of the area, accompanied your Affiant to positively identify the address as the SUBJECT PREMISES. Additional positive identification of the SUBJECT PREMISES was made from county government records, which provides a photograph of said property.**

**In addition to the premises, the affidavit is being submitted in support of a search warrant that includes any structures and vehicles located on the curtilage.**



**PHOTO OF ACTUAL RESIDENCE**
**100049 South 4784 Road, Muldrow, Oklahoma**

# ATTACHMENT B

*DESCRIPTIONS OF ITEMS TO BE SEIZED*

**The items to be seized include evidence associated with violations of Title 42, U.S.C. § 408(a)(4) (Concealment of Material Facts), Title 18, U.S.C. § 641 (Theft of Government Funds), Title 18 U.S.C. § 1344 (Bank Fraud), Title 18, U.S.C. § 1028A (Aggravated Identity Theft), and Title 42, U.S.C. § 407(a)(7)(B) (Misrepresentation of a Social Security Number), including but not limited to the following:**

1. All forms of identification in the names of John David Bailey, aka JD Bailey, such as driver's licenses, birth certificates, Social Security cards, Social Security documents, as well as any other identification documents that bear the photos of Allen Martin and identifiers of John David Bailey, as well as any true documents bearing the identifiers of Allen Martin;

2. All financial records, files, information, and media, relating to any bank account or loan institution, including bank statements, bank deposits, loan records, checks, money orders, and wire transfer notices;

3. All records, files, information and media, relating to receipts, logs, vehicle documents, property documents, insurance documents, tax documents, employment documents, medical documents, items of mail, utility bills, pay stubs, and communications of any nature that bear the name of John David Bailey, or a derivative thereof;

4. All records, files, information, media, or communications of any nature relating to electronically kept telephone records, E-mail, text messages or other notes or records whether financial or otherwise. Agents are authorized to search computers, backup media, cellular telephones and other digital media storage devices on the premises. If Agents cannot, for technical reasons or because of the volume of information, search on site, then Agents are authorized to make an image of hard drives or seize the computers, printers, backup digital media, hard disk drives or other devices capable of storing digital media and remove them to a laboratory setting to retrieve the listed information. Under Rule 41(f)(I)(B), Agents may retain a copy of that information for purposes of the investigation. The government proposes that the original storage media plus a full image copy of the seized media be retained by the government.